MANUFACTURERS HANOVER TRUST Co., as Collateral Trustee and Agent, Plaintiff

v.

M/V TIFAIMOANA, Official No. 610466, Its Masts, Boats, Anchors, Cables, Chains, Rigging, Tackle, Furniture, Engines, Equipment, and all Other Necessaries Appertaining Thereto, Defendants

High Court of American Samoa
Trial Division

CA No. 113-85

March 11, 1988

Before REES, Chief Justice.

Counsel: For Plaintiff, Roy J.D. Hall, Jr.

On Rehearing of Second Motion for Summary Judgment:

 Manufacturers Hanover Bank brought this _in rem_ action in 1985, seeking to foreclose its ship mortgage. The mortgage secured a debt whose principal amount was claimed to exceed $11,000,000. Neither the owners of the vessel nor any other interested party appeared in the action, and in February of 1986 the Court granted summary judgment. The judgment was in the amount of

85

$4,880,461.14, the amount Manufacturers Hanover proved by affidavit accompanying its motion for summary judgment. The ship has since remained under arrest by the High Court pending an anticipated sale to satisfy the judgment.

On December 22, 1987, Manufacturers Hanover filed another motion also styled a "motion for summary judgment." An accompanying memorandum explained that at the time of the first motion "plaintiff was not in a position to accelerate the amounts due under the mortgage" and therefore sought only about $5 million rather than the entire $11 million debt; the second motion for summary judgment "merely seeks to update" the $5 million judgment by seeking a new judgment in excess of $17 million.

After a hearing on the second motion for summary judgment the Court declined to rule until plaintiff had given notice to all known interested parties. The Court suggested that plaintiff set the motion for rehearing after such notice was given and be prepared (1) to prove with specificity that all amounts now sought were among those requested in the complaint; and (2) to persuade the Court that the original contract debt was not merged into the 1985 judgment, barring further recovery. Manufacturers Hanover Trust Co. v. The Tifaimoana, 7 A.S.R.2d 18 (1988) (Opinion and Order on Second Motion for Summary Judgment, issued January 19, 1988).

On rehearing plaintiff has satisfied the Court that the complaint comprehended a demand for $10,738.848 in unpaid principal and (assuming that contractual interest has continued to accrue notwithstanding the entry of the 1986 judgment) $4,455,162 in accrued interest to February 8, 1988.

The other question is far more difficult. According to the rule of res judicata a final judgment (that is, any judgment that is not appealed or that is upheld on appeal) precludes relitigation among the parties of any question raised by the pleadings --- or indeed of any related question that might have been raised. Such a judgment is a bar not only to suits by unsuccessful litigants to undo judgments against them, but also to efforts by successful litigants to recover more than they were awarded.

Manufacturers Hanover urges the Court to construe the 1986 judgment as a "partial" one resolving some issues but not others. Counsel cites one case in which a court so construed an earlier judgment despite the reference of the judgment itself and of the underlying motion to "summary judgment" rather than "partial summary judgment." <u>Teamsters Pension Trust Fund of Philadelphia and Vicinity v. John Tinney Delivery Service, Inc.</u>, 732 F.2d 319 (3d Cir. 1984). That case, however, relied heavily on the fact that the complaint had sought several clearly distinct forms of relief under several separate contracts, whereas the motion for summary judgment had requested judgment only for damages on only some of the contracts. Even on its narrow facts the <u>Teamsters</u> case seems at odds with the principle of repose that gives rise to the rule of <u>res judicata</u>, since the court conceded that the judgment looked to the naked eye as though it had disposed of the whole lawsuit. 732 F.2d at 325. In the case before us there was a single obligation and a single paragraph in the complaint demanding the entire principal amount plus interest and expenses. We decline plaintiff's invitation to assimilate this case to <u>Teamsters</u> by subdividing the principal and interest into separate claims for each date on which payments would have come due if there had been no default. Plaintiff had the contractual right to take judgment in 1985 for the entire principal amount, accrued interest and expenses, and post-judgment interest and expenses. Its decision to take a smaller judgment, at least in the absence of any clear implication to the contrary in the caption <u>or the text</u> of its motion for summary judgment and accompanying memoranda, was a surrender of the right to take more.[1] <u>See</u>

---

[1] We respectfully disagree with the <u>Teamsters</u> court's reliance on Rule 56(d), which requires that the trial judge examine the pleadings and evidence to determine what material facts remain in dispute after a motion for partial summary judgment has been granted. The rule applies only when "judgment is not rendered upon the whole case or for all the relief asked and a trial is necessary." To cite it as authority for the proposition that a particular judgment did or did not resolve the whole case amounts to circular reasoning.

<u>Diaz v. Indian Head, Inc.</u>, 686 F.2d 558 (7th Cir. 1982); <u>Gasbarra v. Park-Ohio Industries, Inc.</u>, 655 F.2d 119 (7th Cir. 1981), and authorities cited therein.

The decision by Manufacturers Hanover to seek a smaller judgment than that to which it was entitled was taken for tax reasons. The price of tuna fish, and consequently of tuna boats, had declined drastically. In early 1986 it appeared unlikely that a judicial sale of the vessel would bring anything like the $11 million principal amount of the mortgage. (To the extent that a court sitting in the defaulted purse-seiner capital of the world cannot take judicial notice of this fact, it appears between the lines in plaintiff's affidavits.) Taking into account the anticipated tax treatment of a $5 million judgment and of an $11 million judgment on which no more than $5 million was likely to be collected, plaintiffs deemed the former more valuable than the latter. Since then at least two important things have happened: the market value of tuna and of tuna boats has increased substantially and the tax laws have changed. Since the tax considerations that motivated plaintiff's earlier decision are acknowledged but not identified, we cannot tell whether the decision to seek a larger judgment now was motivated by one of these changes, by both of them, or by other factors as well.[2] What is clear

---

2. One of plaintiff's counsel has filed an affidavit to the effect that after the motion for summary judgment "the matter was then allowed to remain pending while additional amounts accrued. By leaving the matter pending, it was always plaintiff's intention to seek additional amounts due if market conditions warranted . . . ." The Court is willing to believe that plaintiff subjectively intended to seek additional amounts "if market conditions warranted," at least in the sense that everyone wishes to keep his options open. We have scanned the record in vain, however, for any objective indicia that would have led a reasonable person to believe in 1986 that plaintiff wished the Court to resolve only some issues but not others. The case was left "pending" only in the sense that the ship was not sold. In that sense every case in which there is any

is that in 1988 a $17 million judgment on a vessel that may sell for more than $10 million is worth more than a $5 million judgment. This, however, is not a basis on which we can construe the earlier judgment as only a partial one.

These factors, however, together with other equitable considerations urged by plaintiff, do amount to a basis on which the Court can grant relief under T.C.R.C.P. Rule 60(b). As plaintiff points out, the judgment is only against the vessel. Neither the owners of the vessel nor any other human beings were sued or appeared in the case to assert their rights. Moreover, the plaintiffs actually did lend the $11 million, and the owners borrowed it but never paid it back. A holding that when the ship is sold the plaintiff will receive only the amount of its 1986 judgment plus post-judgment interest and expenses will probably mean that the remainder --- which could be several million dollars --- will revert to the owners, free and clear of any obligation to repay the $11 million they borrowed or any of the interest on it.

In a case in which the owners had been sued _in personam_, or in which they had personally appeared to assert their rights, these factors might be outweighed by the principle of repose. Litigation is an unpleasant experience; although there is no constitutional right to be free from double jeopardy in civil cases, the rule of _res judicata_ serves much the same purpose. Moreover, a person who has been sued and who has had a judgment entered against him is likely to base subsequent actions on the settled expectation that there will be no further judgment. In contrast, the owners of the _Tifaimoana_ have not been sued, have not had to pay anything since their default, and have not asserted their right to receive any money from the sale of the vessel. The only defendant ever

possible need for post-judgment relief (i.e., nearly every case) is "pending" even after judgment. Until its second motion for summary judgment plaintiff never notified the Court that it regarded the matter as "pending" in any other sense; the clerk therefore quite reasonably made the notation "Closed 9/22/86," and the case was treated by the High Court as a closed case until the recent motion.

required to appear in this litigation, the _Tifaimoana_ itself, has been resting peacefully throughout the ordeal. While we believe that plaintiff implicitly waived any absolute right to receive the full amount owing under the contract, the owners' nonappearance constituted a far more explicit waiver. A judgment benefiting them would constitute a far more egregious windfall than that which will be afforded to plaintiffs if the relief they seek is granted. Accordingly, we hold that the unique circumstances of this case comprise an "other reason justifying relief from the operation of the judgment" under Rule 60(b).

The second motion for summary judgment is construed as requesting relief from the operation of the judgment and is granted as such. Judgment shall issue for the plaintiff in the amount requested, minus the "penalty interest" for which the court can ascertain, on the present record, no contractual basis. Plaintiff shall make diligent efforts to serve a copy of this judgment immediately on each person known to have had an ownership interest in the vessel prior to the foreclosure of the mortgage.

It is so ordered.